IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Z.F. et al.,

        Plaintiffs,                        No. 2:11-CV-02741-KJM-GGH

        vs.

RIPON UNIFIED SCHOOL DISTRICT,

        Defendant.                      <u>ORDER</u>

_____/

        Plaintiffs[1] Z.F. and his mother appeal a decision issuing from the State of California, Office of Administrative Hearings ("OAH") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A). Plaintiffs move for summary judgment, alleging that the OAH decision incorrectly found that defendant, Ripon Unified School District ("District"), offered Z.F. a free appropriate public education ("FAPE") as required by the IDEA. (ECF 12.) Defendant cross-moves for summary judgment, urging this court to affirm the OAH decision. (ECF 15.) The court heard oral argument on October 19, 2012; George D. Crook appeared for plaintiffs and Ileana Butu appeared for the District. For the following reasons,

////

---

[1] Plaintiff Z.F. pursues this action by and through his guardian ad litem who is his mother; his mother also is a named plaintiff.

1

plaintiffs' motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

I.  STATUTORY, PROCEDURAL, AND FACTUAL BACKGROUND

    A.  Procedural History and Statutory Background

The IDEA requires all states receiving federal education funds to provide disabled children a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). The FAPE must be tailored to each student's unique needs through an individualized education program ("IEP"). 20 U.S.C. § 1401(9). An IEP is a written statement for each disabled student that includes, for example, goals, measures of progress, and a statement of special education and supplementary aids and services the student will be provided. 20 U.S.C. § 1414(d)(1)(A)(i). An IEP is formulated by the school district in conjunction with a student's parents and others. A school district or a parent can request an administrative due process hearing before a state administrative law judge ("ALJ") to receive a determination on whether an IEP in fact offers a student a FAPE as required by the IDEA. 20 U.S.C. §1415(f)(1)(A).

On February 17, 2011, plaintiffs refused to agree to the IEP at issue in this case. AR[2] Vol. 5 at 1242. In response, the District filed with the OAH a request for a due process hearing, styled as a complaint, on March 17, 2011, to determine whether the IEP accorded with the IDEA. AR Vol. 5 at 1242. The District filed its second amended complaint on March 24, 2011. *Id.* The ALJ assigned to the case held a three-day hearing from May 17 through May 19, 2011. *Id.* In her July 18, 2011 written decision, the ALJ found for the District on all issues, concluding that the District's February 17, 2011 IEP adhered to the IDEA's requirements and therefore offered Z.F. a FAPE. AR Vol. 5 at 1264. Plaintiffs timely filed this action, as authorized by 20 U.S.C. §1415(i)(2)(A), to seek this court's review of the ALJ's decision.

////

---

[2] AR stands for the Administrative Record lodged with this court.

B.   Facts[3]

Z.F. is an 11-year-old boy with autism who is eligible for special education services under the IDEA. AR Vol. 5 at 1245. At all times relevant to this action, Z.F. attended Weston Elementary School within Ripon Unified School District. *Id.* When Z.F. began kindergarten in 2006, he was placed in a general education classroom for most of the day; however, he was always accompanied by a one-to-one aide from Genesis, a non-public agency ("NPA")[4] under contract with the District to provide behavioral intervention services for a number of District students. *Id.* Each of Z.F.'s IEPs, including the February 17, 2011 IEP at issue here, provided that Z.F. shall receive behavior intervention services from any NPA under contract with the district; Genesis was never specifically prescribed in Z.F.'s IEPs. AR Vol. 4 at 928; AR Vol. 5 at 1251. Genesis provided Z.F. these services for over four years. During this time, ten different Genesis aides, including four in Z.F.'s last school year alone, and four or five different Genesis case managers worked with Z.F. AR Vol. 5 at 1255. Z.F. had no difficulty with transitions from one Genesis aide to another, except during the 2007-2008 school year. AR Vol. 5 at 1255-56. On January 24, 2011, the District and Genesis executed a mutual agreement to terminate Genesis's services for the District, with termination to take effect on or before February 17, 2011. AR Vol. 6 at 1619-20. The District notified plaintiffs on January 19, 2011 that another NPA, Learning Solutions, would replace Genesis. AR Vol. 5 at 1355.

As the ALJ noted, the District's decision to replace Genesis with Learning Solutions is at the heart of this matter. AR Vol. 5 at 1245. The District began discussing replacing Genesis during Z.F.'s November 16, 2009 IEP process. AR Vol. 6 at 1810. At that

---

[3] As discussed in the section that follows, the court has determined the ALJ's administrative findings deserve deference because they are "thorough and careful." *K.D. v. Dep't of Ed., Hawaii*, 665 F.3d 1110, 1117 (9th Cir. 2011).

[4] An NPA is "a private, nonsectarian establishment or individual that provides related services necessary for an individual with exceptional needs to benefit educationally from the pupils' educational program pursuant to an individualized education program [. . .] that is certified by the department [of education]." CAL. EDUC. CODE § 56035.

point in time, the District intended to replace Genesis with district aides, not with another NPA. *Id.* Z.F.'s 2009 IEP team concluded that switching from Genesis to district aides would require a transition plan. *Id.* Z.F.'s mother stated she would sign "no" to an IEP that replaced Genesis with district aides. AR Vol. 6 at 1811. On August 6, 2010, plaintiffs received a letter notifying them that Genesis had been terminated.[5] AR Vol. 3 at 661. In the end, however, the District retained Genesis, in part because it was not able to conclude arrangements for a replacement NPA at that time. AR Vol. 2 at 402. Genesis remained Z.F.'s NPA until the mutual rescission agreement reached by the District and Genesis on January 19, 2011. AR Vol. 5 at 1355.

        In a meeting on February 17, 2011, the District offered the IEP challenged here, which plaintiffs rejected and which the ALJ found complied with the requirements of IDEA. AR Vol. 5 at 1246. This IEP was drafted over three IEP team meetings. Z.F.'s mother attended the first meeting held on November 8, 2010, which lasted several hours. AR Vol. 5 at 1247. The group meeting there, including the mother, selected November 22, 2010 as the next meeting date, because it had not satisfactorily completed the new IEP. AR Vol. 5 at 1247. Approximately one-and-a-half hours before the November 22 meeting, the mother called the District to say she would not be able to attend. *Id.* The ALJ concluded that the mother must not have objected to the meeting occurring without her, as the meeting was held and she did not complain of her absence from the meeting in the due process hearing. *Id.* An additional meeting, set first for December 16, 2010 and then January 25, 2011, was never held: the first date was cancelled because the District's Special Education Director, an indispensable IEP team member, had to attend to a hospitalized parent; the second was cancelled because Z.F.'s mother had to leave the country upon the death of a parent. AR Vol. 5 at 1248-1249. The mother was present for the final meeting, held on February 17, 2011, at which the challenged IEP was offered. AR Vol. 5 at 1246.

---

[5] Although this letter was not entered into evidence, the ALJ accepted its existence given the District's testimony on the subject. AR Vol. 3 at 663.

4

1  The District provided Z.F a transition between NPAs, and Z.F.'s mother had some input on this transition. The District arranged for a Learning Solutions aide to overlap with a Genesis aide for four days, from February 14, 2011 until Genesis's contract expired on February 17, 2011. AR Vol. 5 at 1380. However, because Z.F. did not attend school on February 16 and 17, aides from the two NPAs overlapped on only two days. AR Vol. 5 at 1614. Z.F.'s mother participated in email and in-person discussions about the transition from Genesis to Learning Solutions. AR Vol. 3 at 682, 685; AR Vol. 5 at 1358-1359, 1366-1367, 1379-1394, 1398-1399. Both sides testified that Z.F.'s mother had email exchanges with Erin Chargin, the owner and director of Learning Solutions, and with Susan Harper, the District's Coordinator of Student Support. AR Vol. 3 at 491, 682. Additionally, the mother asked Ms. Chargin several questions about Learning Solution's practices and its ability to replace Genesis at the February 17, 2011 meeting at which the District offered the IEP at issue here. AR Vol. 3 at 493.

Plaintiffs allege that the District violated IDEA procedures by predetermining the nature of Z.F's transition from Genesis to Learning Solutions, without giving Z.F.'s parents input on the transition. ECF 12 at 1.

II.  STANDARD OF REVIEW

In IDEA cases, courts give less deference to an administrative decision than in other administrative cases, but at the same time full *de novo* review is inappropriate. *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 949 (9th Cir. 2010) (citing *J.G. v. Douglas County Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008); *see also Bd. Of Educ. v. Rowley*, 458 U.S. 176, 206 (1982) (stating that "due weight" should be given to the administrative proceedings below). Congress provides the following guidance regarding standard of review:

/////
/////
/////
/////

> In any action brought under this paragraph, the court—
>
> (i) shall receive the records of the administrative proceedings;
> (ii) shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. §1415(i)(2)(C). A court therefore can hear evidence that "goes beyond the scope of the administrative record and, based on a preponderance of the evidence, 'grant such relief as the court determines is appropriate.'" *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (quoting 20 U.S.C. § 1415(i)(2)(C)).

This action is presently before the court on cross-motions for summary judgment. Under traditional summary judgment standards, the existence of disputed issues of material fact is fatal to the moving party. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In most IDEA appeals, there are disputed issues of fact. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891-92 (9th Cir. 1998). But the district court cannot hear the case anew, for otherwise the work of the ALJ would not receive "due weight." *Id.* at 891. The pending motions in this IDEA action, therefore, differ from ordinary summary judgment motions because the existence of a disputed issue of material fact will not defeat the motion. *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003) ("The inquiry, however, is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed.").

The Ninth Circuit has clarified that administrative decisions under the IDEA should receive some deference. The court in *Capistrano* reasoned that some deference to the administrative decision "makes sense" for the same reasons deference is given to other agency actions: "agency expertise, the decision of the political branches . . . to vest the decision initially in an agency, and the costs imposed on all parties of having still another person redecide the

issue from scratch." 59 F.3d at 891 (citing *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). The Circuit also has noted the structure of the IDEA demonstrates that Congress "intended states to have the primary responsibility of formulating each individual child's education." *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 (9th Cir. 2007). Consequently, the court must "not substitute [its] opinions of sound educational policy for those of the school authorities which [it is] reviewing." *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).

The quality of the administrative decision determines the amount of deference the District Court should afford it. Greater deference should be given to the ALJ's findings when they are "thorough and careful." *K.D.*, 665 F.3d at 1117; *Hood*, 486 F.3d at 1104; *see also Capistrano*, 59 F.3d at 891-92 (holding that "[t]he hearing officer's report was especially careful and thorough, so the judge appropriately exercised her discretion to give it quite substantial deference"); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1476 (9th Cir. 1993) (holding that an ALJ's decision is entitled to "substantial weight" where the "decision evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented"); *G.D. v. Torrance Unified Sch. Dist.*, 857 F. Supp. 2d 953, 964 (C.D. Cal. 2012) (giving "substantial deference" to the ALJ's decision because it was not only "thorough and careful" but also "intensive and comprehensive."). However, courts retain the freedom to decide independently how much weight to give the ALJ's findings and conclusions. *Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1009 (9th Cir. 2009).

Plaintiffs argue that this court should afford the OAH decision no deference because the ALJ failed to frame correctly one of the plaintiffs' primary legal arguments. Pls.' Mot. Summ. J. at 6-10, ECF 12. At hearing, plaintiffs argued the District violated IDEA procedures by predetermining that Z.F.'s IEP would not include an adequate plan for

////

////

transitioning Z.F. from Genesis to Learning Solutions.[6]  ECF 12 at 9-10.  This argument focused on predetermination concerning the transition between NPAs.  Plaintiffs aver that the ALJ's decision focused on predetermination in the context of the District's power unilaterally to change NPAs, which power plaintiffs concede the District has.  *Id.*; AR Vol. 1 at 33.  In their motion here, plaintiffs reproduce part of the hearing transcript to show the ALJ understood the predetermination issue in the "correct" context of the transition from one NPA to another, at the hearing.  ECF 12 at 9-10.  Juxtaposing the ALJ's formulation of the issue at the hearing with the ALJ's later written decision, plaintiffs seek to show that the case the ALJ resolved in her decision was "not the case before her."  *Id.*  This court is unpersuaded.

The ALJ did not overlook or misunderstand plaintiffs' predetermination argument.  The ALJ comprehensively addressed the argument in the very paragraph that plaintiffs have reproduced in part in their motion, but in an excerpt plaintiffs have excised.  AR Vol. 5 at 1260; ECF 12 at 9.  In that paragraph, the ALJ incorporated correct legal principles and Factual Findings 20-25, which discuss predetermination in the transition context, to conclude that "the termination of Genesis as the provider of aide services to Z.F. did not constitute a predetermination of Z.F.'s IEP that denied Parents meaningful participation in the IEP process."  AR Vol. 5 at 1260.  As the court discusses more fully below, an IDEA procedural violation is redressable only when, among other things, it denies parents meaningful participation in the IEP process.  *Mercer*, 592 F.3d at 953; 20 U.S.C. § 1415(f)(3)(E)(ii).  The ALJ articulated this legal standard in Paragraph 5 of her legal conclusions.  AR Vol. 5 at 1258.  In Paragraphs 20-25 she concluded that Z.F.'s parents were allowed meaningful participation in the IEP process, even if the District predetermined that no adequate transition plan would be considered.  AR Vol. 5 at 1250-1251 (stating that "Z.F. claims that this change in [NPA] providers violated his procedural

---

[6] As discussed more fully below, predetermination is a problem because each child's IEP should be formulated collaboratively by IEP team members, which include a child's parents.  A school district should not, therefore, unilaterally determine a child's IEP.

8

rights because it was an impermissible predetermination by the District that denied Parents meaningful participation in the IEP decision-making process"). Properly understood, the ALJ's conclusion is that the law provides plaintiffs no relief because any predetermination, which qualifies as a procedural error under the IDEA, did not deny Z.F.'s parents of meaningful participation in the IEP process.

Here, the ALJ's decision deserves substantial deference because it is comprehensive, careful, and intensive. The ALJ presided over a three-day hearing. AR Vol. 5 at 1242. Each side presented at least a dozen witnesses, including several expert witnesses. AR Vol. 4 at 1177-79 (plaintiffs' witness list); AR Vol. 4 at 1184-85 (defendant's witness list). The parties sharpened the issues to be addressed during the hearing through pre-hearing colloquies and briefing. AR Vol. 4 at 1130, 1151, 1154. During the hearing, the officer demonstrated a clear understanding of the dispositive issues before her. After the hearing, the parties submitted extensive post-hearing briefs to advocate further their positions. AR Vol. 3 at 1198, 1220. The ALJ's 23-page single-spaced decision, which contains very thorough factual findings, exhibits a well-reasoned, impartial, and thoughtful evaluation of each party's contentions. *See* AR Vol. 5 1242-1264. Consequently, this court grants the decision substantial weight.

III.   ANALYSIS

The sole task, then, for the court in this case is to determine whether a preponderance of the evidence supports the ALJ's finding that the District, through its February 17, 2011 IEP, offered Z.F. a FAPE. This court's inquiry is twofold. The first, "procedural prong" requires the court to consider whether the state complied with the procedures set forth in the IDEA. *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001); *Bd. of Educ. of Hendrick Hudson Cen. Sch. Dist., Westchester Cnty. v. Rowley* 458 U.S. 176, 206-07 (1982). Under the second, "substantive prong," the court must determine if the IEP

////

////

developed through those procedures was reasonably calculated to enable the child to receive educational benefits.[7] *Amanda J.*, 267 F.3d at 890; *Rowley*, 458 U.S. at 206-07.

A. Compliance with IDEA Procedures

In analyzing whether the District offered Z.F. a FAPE under the IDEA, the court first evaluates whether the District complied with the IDEA's procedural requirements. *Rowley*, 458 U.S. at 206–07. Not every procedural violation results in the denial of a FAPE, however. *Mercer*, 592 F.3d at 953. A procedural violation denies a FAPE if it "results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *Id.*; 20 U.S.C. § 1415(f)(3)(E)(ii).

Here, plaintiffs assert that the District did not comply with IDEA procedures because it had "predetermined" in advance of the February 17, 2011 IEP that it would not offer Z.F. an adequate plan to transition between NPAs. An adequate plan, according to plaintiffs, necessarily would have involved the provision of services by Genesis beyond the termination date of Genesis's contract with the District. ECF 12 at 3. Plaintiffs point to a series of District actions, dating back to 2009, as establishing that the District was fixated on replacing Genesis at whatever cost to affected students.[8] ECF 12 at 3. Additionally, plaintiffs aver that the 2011 mutual termination agreement between the District and Genesis is direct evidence of predetermination: the agreement ended any possibility that Genesis could be involved with Z.F. in any way after the contract's termination date. ECF 12 at 5. In short, plaintiffs allege that the District terminated Genesis' services without properly consulting Z.F.'s IEP team, and in

---

[7] Although Congress has amended the IDEA several times since the *Rowley* decision, the test the Supreme Court outlined in that case remains applicable. *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947-48 (9th Cir. 2010).

[8] The District several times discussed replacing Genesis with district aides. AR Vol. 6 at 1810. At one point, the District fired Genesis, notifying plaintiffs of this in a letter. *Id.* However, apparently because it was unable to find a replacement NPA, the District then renewed its contract with Genesis. AR Vol. 2 at 402.

10

particular his parents, thereby independently predetermining the nature of Z.F.'s transition from Genesis to the new NPA.

Plaintiffs never explicitly state why this procedure is sufficient to deny Z.F. a FAPE as a matter of law. The court infers from plaintiffs' arguments about parental participation in students' IEPs that plaintiffs believe the District's predetermination "seriously infringe[d] [their] opportunity to participate in the IEP formulation process," thereby rising to the level of a redressable procedural violation under the IDEA. *Mercer*, 592 F.3d at 953; *see* ECF 12 at 5.

The District counters that Z.F.'s parents had ample opportunity to participate in formulating the February 17, 2007 IEP. Def.'s Mot. Summ. J. at 16, ECF 15. The District also avers that it has the sole discretion to select a qualified NPA to provide services as required by students' IEPs. ECF 15 at 16-17. Simply replacing Genesis with Learning Solutions, the District maintains, does not equate to the District's independently developing a student's IEP. ECF 15 at 14.

Predetermination occurs when an educational agency has made a determination prior to the IEP meeting, including when it presents one educational placement option at the meeting and is unwilling to consider other alternatives. *Deal v. Hamilton Cnty. Bd. of Educ.* 392 F.3d 840, 858 (6th Cir. 2004). Predetermination violates the IDEA because the Act requires that an educational placement be based on the IEP, and not vice versa. *K.D.*, 665 F.3d at 1123 (citing *Spielberg v. Henrico Cnty. Pub. Sch.*, 853F.2d 256, 259 (4th Cir. 1988)). Parents must have the opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child." *H.B. v. Las Virgenes Unified Sch. Dist.*, 239 F. App'x 342, 344-45 (9th Cir. 2007) (quoting 20 U.S.C. § 1415(b)(1)). Ninth Circuit cases emphasize that parents must be invited to attend IEP meetings and must have the opportunity for meaningful participation in the formulation of IEPs. *See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69,* 317 F.3d 1072, 1078 (9th Cir. 2003) ("The IDEA 'imposes upon the school district the duty

to conduct a meaningful meeting *with* the appropriate parties.'") (quoting *W.G. v. Board of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1483 (9th Cir. 1992) (emphasis in the original)). Thus, "[a] school district violates IDEA procedures if it independently develops an IEP, without meaningful parental participation, and then simply presents the IEP to the parent for ratification." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1131 (9th Cir. 2003).

Courts in this Circuit have rarely found that a school district's predetermining a student's IEP rises to the level of a redressable violation of IDEA procedures. This is for two primary reasons. First, procedural violations must surpass a substantial threshold: "procedural violations that have been found sufficient to deprive a student of a FAPE have been labeled 'egregious.'" *K.M. v. Tustin Unified Sch. Dist.*, No. SACV 10-1011 DOC, 2011 WL 2633673, at *11 (C.D. Cal. July 5, 2011) (quoting *Amanda J.*, 267 F.3d at 891); *see also M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 656 (9th Cir. 2005) (holding that failing to include the student's regular education teacher on the IEP team denied the student a FAPE). Predeterminations that rise to the level of "egregiousness" typically involve a school district adopting a "take it or leave it" approach to all, or a significant part of, a student's IEP. *See, e.g., Target Range*, 960 F.2d at 1484 (finding predetermination when the school district independently developed the IEP without the input of the student's parents, teachers, or other school representatives).

Second, it is often difficult to prove that a district in fact made a determination before an IEP meeting. The Ninth Circuit recently declined to decide whether it was predetermination to take an autistic child from his private school and place him in a public school classroom for children with autism, with no input from the parents and with evidence of a longstanding district plan to make this change.[9] *Las Virgenes*, 239 F. App'x at 344-45. This case is instructive because changing a student's educational placement from private to public school,

---

[9] The Circuit lacked sufficient facts to make this determination, remanding for supplementation of the record. *Las Virgenes*, 239 F. App'x at 345. The court found it critical to know whether the school district was "unwilling to consider other placements" even if the parents had given input. *Id.*

12

with no parental input, a more drastic change than switching behavioral services providers, did not qualify as a *per se* IDEA procedural violation. *Id.* at 345.

Here, the District's actions with regard to Z.F.'s transition from Genesis to Learning Solutions are not sufficiently egregious to deny Z.F. a FAPE. The court reaches this conclusion for several reasons. First, the fact that the District terminated its contract with Genesis does not mean the District was unwilling to consider others' input on Z.F.'s NPA transition or unable to act on such input. In their termination agreement, the District and Genesis agreed to end Genesis's services for the District on or before February 17, 2011, the very day the District offered Z.F. the IEP that is the basis of this action. AR Vol. 6 at 1619-1620. Despite plaintiffs' assertions that Z.F.'s NPA transition was predetermined because IEP team members thought the termination agreement made discussing a transition "moot" (AR Vol. 1 at 149), a fair reading of the record suggests the District and other IEP team members simply believed Z.F. did not require an elaborate transition plan.[10] Z.F. had ten different Genesis aides with four in his last school year alone and four or five different Genesis case managers over the four-plus years Genesis provided his behavioral intervention services. AR Vol. 5 at 1255. Despite the many transitions he experienced, he had difficulty with these transitions only during the 2007-2008 school year. AR Vol. 5 at 1255. Based upon this evidence, the ALJ concluded that the February 17, 2011 IEP did not require a transition plan. AR Vol. 5 at 1256. Additionally, Z.F.'s mother

/////

---

[10] Sharon Filippi, an IEP team member who is a speech and language pathologist, testified before the ALJ that she thought discussing a transition would have been "moot" in light of Genesis' termination; however, she went on to say that, had a transition been discussed at that meeting, she did not "think a lot would have been — a lot more would have done [sic] — if anything, I just think it would have been discussed more." AR Vol. 1 at 150. Susan Harper, coordinator of special education services for the District, testified that she did not consider extending Genesis's termination date to accommodate a transition because she "really felt very confident in Learning Solutions." AR Vol. 2 at 435. Ms. Harper had "spoken to many people about [Z.F.'s] ability to move forward ." *Id.* She further testified that the transition "was not brought up at the IEP as a concern by anyone that this was going to be a difficult transition at that point . . . Genesis was there, they didn't have any objection to that either." *Id.* at 438.

13

was not surprised at the February 17, 2011 IEP meeting by the news that Genesis was being terminated; she had been notified by letter on January 19, 2011. AR Vol. 5 at 1355.

Second, as a practical matter, the District has the power unilaterally to choose NPAs. Plaintiffs concede as much. ECF 12 at 9-10. So long as this choice does not affect the substantive quality of a student's IEP, and a student's IEP does not require the services of a particular NPA, the IDEA provides no relief to a parent who does not agree with the District's choice of provider. Plaintiffs do not allege, and the record does not support, that Genesis's replacement NPA, Learning Solutions, is unqualified for the job of an NPA. None of Z.F.'s IEPs specifically named Genesis; every one of his IEPs fashioned in the District, including the February 17, 2011 IEP at issue here, provides that Z.F. receive behavior intervention services from any NPA under contract with the district. AR Vol. 4 at 928; AR Vol. 5 at 1251. Z.F. continues to receive the same IEP services, with a different company providing them.

Finally, the District's actions do not rise to the level of a procedural violation that seriously impaired Z.F.'s parents' opportunity to participate in the IEP formulation process. Maximum parental participation is not the standard under the IDEA; rather, the standard is meaningful participation. *Mercer*, 575 F.3d at 1033 (citing *Rowley*, 458 U.S. at 197 n.21, 200). Z.F.'s parents had many opportunities to participate meaningfully in formulating the significant elements of the February 17, 2011 IEP. They also had the opportunity to provide input on his transition between NPAs.

The administrative record supports the ALJ's conclusion that Z.F.'s mother meaningfully participated in the IEP process. Leading up to the District's IEP offer on February 17, 2011, Z.F.'s IEP team held three meetings. His mother attended the first, held on November 8, 2010, which, not unusually for Z.F.'s team meetings, lasted several hours. AR Vol. 5 at 1247. The group meeting that day, including the mother, selected November 22, 2010 as the next meeting date, as it had not satisfactorily completed the new IEP. *Id.* Shortly before the November 22 meeting, Z.F.'s mother called the District to say she would not be able to attend.

14

*Id.* The meeting was held and the mother did not make her absence from the meeting an issue in the due process hearing. *Id.* An additional meeting, set for December 16, 2010 and then January 25, 2011, was never held. AR Vol. 5 at 1248-1249. The IEP that is the basis of this action was offered to the mother at the third meeting on February 17, 2011. AR Vol. 5 at 1249.

Z.F.'s mother also participated in email and in-person discussions specifically about the transition from Genesis to Learning Solutions. AR Vol. 3 at 682, 685; AR Vol. 5 at 1358-59, 1366-67, 1379-94, 1398-99. The owner and director of Learning Solutions, Erin Chargin, testified that she sent the mother two or three emails in January regarding the NPA transition. AR Vol. 3 at 491. The mother asked Ms. Chargin several questions about Learning Solution's practices and ability to replace Genesis at the February 17, 2011 meeting at which the District offered Z.F.'s IEP. AR Vol. 3 at 493.

At Z.F.'s hearing on the pending motions, plaintiffs' counsel refined plaintiffs' position, stating it was not Z.F.'s mother's lack of an opportunity to participate in formulating an NPA transition plan, but rather that the District was not receptive to her desires. The IDEA guarantees parents the opportunity to participate meaningfully; however, as one participant in a group, the parents' opinions may be overridden. *Vashon*, 337 F.3d at 1131 (stating that a district "has no obligation to grant [a parent] a veto power over any individual IEP provision."). Here the record contains several emails from Z.F.'s mother to various District personnel that suggest some tension existed between the parties. *See, e.g.*, AR Vol. 5 at 1358 (depicting an email in which the mother, in response to emails about IEP processes, takes the District to task for various alleged infractions against her and Z.F.). However, these emails also demonstrate that the mother was meaningfully active in Z.F.'s IEP processes: her preference for one NPA company over another was simply overridden by the District. No authority provides that such an action denied Z.F. a FAPE.

The facts of this case thus are materially distinguishable from those of *Target Range*, a case plaintiffs think should control this one. In *Target Range,* the district

15

independently developed a student's entire IEP and then presented it to the student's parents, without their input or participation, and without the input or participation of the student's regular classroom teacher or any other representative of the student's school. 960 F.2d at 1484. Here, Z.F.'s IEP team met on three occasions, and the District did not unilaterally change a single provision of the IEP, it only changed the entity tasked with fulfilling a provision of the IEP. The record demonstrates that Z.F.'s entire IEP team, including his parents, participated meaningfully in the formulation of the February 17, 2011 IEP. And most members of the IEP team simply did not believe a transition was necessary.[11]

Therefore, the court holds that the District's February 17, 2011 IEP did not deny Z.F. a FAPE through predetermining the nature of Z.F.'s transition to a new NPA.

B.  Substantive Sufficiency of the IEP

Apart from procedural compliance, the IEP must also satisfy the substantive prong of the *Rowley* test: it must be "reasonably calculated to enable the child to receive educational benefits." *Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982).

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education [a 'FAPE'] that emphasizes special education and related services designed to meet their unique needs." *M.M. v. Lafayette Sch. Dist.*, CV 09-4624, 2012 WL 398773, at *5 (N.D. Cal. Feb. 7, 2012) (quoting 20 U.S.C. § 1400(d)(1)(A)). "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Id.* (quoting *Schaffer,* 546 U.S. at 53). Schools are obligated to provide "a 'basic floor of opportunity' to disabled students, not a 'potential-

---

[11] The District did in fact provide Z.F. a transition between NPAs. A Learning Solutions aide overlapped with a Genesis aide for four days, from February 14 until the Genesis contract expired on February 17. AR Vol. 5 at 1380. But Z.F. did not attend school on February 16 and 17. AR Vol. 5 at 1614. At the hearing on this matter, plaintiffs' counsel effectively conceded that the decision to keep Z.F. home during these two days was not advisable.

maximizing education.'" *J.L. v. Mercer Island Sch. Dist.,* 575 F.3d 1025, 1033 (9th Cir. 2009) (quoting *Rowley,* 458 U.S. at 197 n.21, 200).

Plaintiffs' motion for summary judgment focuses only on the alleged procedural deficiencies in the District's development of Z.F.'s February 17, 2011 IEP. In fact, before the OAH hearing, plaintiffs stipulated that, other than the seven issues specifically objected to, the February 17, 2011 IEP was otherwise "designed to meet Z.F.'s unique needs and confer educational benefit." AR at 1244. The only one of those seven issues plaintiffs have appealed to this court is the predetermination-in-transition argument. As plaintiffs do not allege that Z.F.'s IEP was substantively deficient and nothing in the record suggests such deficiency, and as the ALJ found that the February 17, 2011 IEP offered Z.F. a FAPE, the court finds this prong is satisfied.

III.   CONCLUSION

For the foregoing reasons, the court affirms the ALJ's decision as supported by the preponderance of the evidence. The record demonstrates that the District provided Z.F. with a FAPE in the February 17, 2011 IEP. The District's motion for summary judgment is hereby GRANTED, and plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED: January 8, 2013.

UNITED STATES DISTRICT JUDGE